TYRONE ROLLE,
            Petitioner,

OPINION AND ORDER
04-CV-4182 (LB)

-against-

CALVIN WEST,
            Superintendent.
----------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

Tyrone Rolle petitions this Court pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to decision of this petition by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the following reasons, the petition is denied.

## BACKGROUND

### I. Facts

According to the testimony adduced at trial in Supreme Court, Queens County, petitioner, while incarcerated on Rikers Island in October 1996 awaiting trial on rape charges, approached another inmate to solicit the murder of the complaining witness, ME, for $50,000.00. T at 448-49.[1] The inmate reported this incident to the police. Id. at 460. The Queens District Attorney's Office subsequently commenced an investigation. Id. at 287. On October 18, 1996, an undercover officer, posing as a hit man, met with petitioner in the visiting room at Rikers Island. Id. at 294. During that meeting, petitioner negotiated payment with the undercover officer for the murder of ME. Id. at 301-02. Petitioner gave the officer two handwritten notes with ME's name, address, physical description, and car model, in addition to contact information for petitioner's girlfriend, who would give the officer

---

[1] "T at __" refers to pages of the trial transcript.

further information regarding how to locate ME as well as information regarding how to receive payment. Id. at 303. This meeting was recorded by a hidden camera and an audio recording device worn under the officer's clothes. Id. at 295, 313. Both the video and audio tapes were played for the jury. Id. at 315, 333.

On October 19, 1996, petitioner's girlfriend contacted the undercover officer and arranged a three-way phone call between herself, petitioner, and the undercover officer. Id. at 336. During that phone call, both petitioner and his girlfriend confirmed that they wanted the officer to murder ME, but that the plan should be placed on hold. Id. at 336-37.

On October 31, 1996, the undercover officer called petitioner's girlfriend to determine the status of the plan. Id. at 338. She informed him the plan was still on hold; that she was waiting to hear from the petitioner; and that once she heard, she would contact the undercover officer again. Id. at 338. That same day, petitioner was arrested on charges of Conspiracy in the Second Degree (NEW YORK PENAL LAW § 105.15) under Queens County Indictment No. 4072/96. Id. at 338. The People made a pre-trial Molineux application to introduce evidence that the target of petitioner's conspiracy was the complaining witness in the pending rape case against him. Id. at 221. Over petitioner's objections, the Court allowed the evidence to be introduced with limiting instructions to the jury. Id. at 223. After a jury trial, on November 25, 1997, petitioner was convicted of second-degree conspiracy and sentenced as a persistent felony offender to an indeterminate prison term of twenty-two years to life. S at 131.[2]

## II. Procedural History

Petitioner's conviction was affirmed by the Appellate Division on April 1, 2001, People v.

---

[2] "S at ___" refers to pages of the sentence hearing.

Rolle, 282 A.D.2d 624 (2d Dept. 2001), and the Court of Appeals denied petitioner's leave application on October 5, 2001. People v. Rolle, 97 N.Y.2d 643 (2001).

On June 13, 2002, Petitioner moved pro se for a writ of error coram nobis, arguing that 1) he was denied the effective assistance of defense counsel because counsel, *inter alia*, failed to properly challenge the court's Molineux ruling, and 2) he was denied the effective assistance of appellate counsel because appellate counsel, *inter alia*, failed to argue that petitioner was denied the effective assistance of defense counsel. The Appellate Division denied petitioner's motion on November 25, 2002, People v. Rolle, 299 A.D.2d 565 (2d Dept. 2002), and the Court of Appeals denied petitioner's leave application on April 8, 2003. People v. Rolle, 99 N.Y.2d 658 (2003).

On June 3, 2003, petitioner moved pro se to vacate the judgment of conviction pursuant to N.Y. CRIM. PROC. L. § 440.10, arguing that he was denied the effective assistance of defense counsel because defense counsel would not permit petitioner to testify on his own behalf at trial. On January 5, 2004, the court found petitioner's claim was procedurally barred pursuant to N.Y. CRIM. PROC. L. § 440.10(2)(c) as the issue was preserved on the record and could have been raised on direct appeal. The Appellate Division denied petitioner's leave application on July 2, 2004.

Petitioner filed the instant pro se petition on October 14, 2004, claiming he was denied the effective assistance of both defense and appellate counsel. Specifically, petitioner argues that defense counsel's assistance was ineffective because he 1) failed to call witnesses on petitioner's behalf and failed to effectively cross-examine the People's witnesses; 2) failed to make proper arguments in response to the People's Molineux application; 3) prevented petitioner from testifying at trial; and 4) failed to request that the court instruct the jury on lesser included offenses. Additionally, petitioner argued that his appellate counsel was ineffective because appellate counsel did not raise a claim of

3

ineffective assistance of trial counsel.

On December 7, 2004, respondent alerted the Court that several claims in the petition were unexhausted. On January 17, 2004, pursuant to Zarvela v. Artuz, 254 F.3d 374 (2d Cir. 2001), petitioner requested a stay to present his unexhausted claims to the appropriate state court. On April 26, 2005, the Court ordered petitioner to show good cause in writing, pursuant to Rhines v. Weber, 544 U.S. 269 (2005), why he failed to exhaust his claims in state court prior to filing the instant petition. Petitioner did not respond to the Court's order.

Nevertheless, on March 15, 2005, petitioner moved pro se seeking a writ of error coram nobis for a second time, arguing that he was denied effective assistance of appellate counsel because appellate counsel did not raise a claim of ineffective assistance of trial counsel based on defense counsel's alleged failure to 1) put on a defense; 2) allow petitioner to testify; 3) protect petitioner's right to present a defense; and 4) request a jury instruction on lesser included offenses. The Appellate Division denied petitioner's application on October 11, 2005, People v. Rolle, 22 A.D.3d 611 (2d Dept. 2005), and the Court of Appeals denied petitioner leave to appeal on January 31, 2006. People v. Rolle, 6 N.Y.3d 780 (2006).

On December 13, 2005, petitioner moved pro se for a writ of error coram nobis for a third time, arguing that he was denied effective assistance of appellate counsel because, *inter alia*, appellate counsel failed to raise an ineffective assistance of defense counsel claim based on grounds unrelated to the instant petition. The Appellate Division denied petitioner's application on July 11, 2006, People v. Rolle, 31 A.D.3d 583 (2d Dept. 2006), and the Court of Appeals denied petitioner leave to appeal on May 30, 2007. People v. Rolle, 8 N.Y.3d 990 (2007).

## III. The Instant Petition

By order dated May 7, 2007, the Court denied petitioner's request to stay the proceedings and ordered respondent to answer the petition. Respondent opposed the petition and petitioner requested an extension of time, until July 9, to reply to respondent's opposition. The Court granted petitioner's request on July 5 and on July 10, petitioner requested a second extension of time, until July 31, to file a response. The Court granted petitioner's request and marked it final. No reply was filed by petitioner.

## DISCUSSION

### I. Standard of Review

Petitioner's claims are governed by the standards set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2254. For claims that have been adjudicated on the merits in state court proceedings, a petitioner must show that the state court proceedings:

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;
> or
>
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, the Supreme Court held that a state court decision is "contrary to" clearly established federal law if a state court 1) "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme

Court. Williams v. Taylor, 529 U.S. 362, 405, (2000). "'Clearly established federal law' in § 2254(d)(1) 'refers to the holdings, as opposed to the dicta, of the court's decision as of the time of the relevant state court decision.'" Carey v. Musladin, 127 S. Ct. 649, 653, (2006) (quoting Williams, 529 U.S. at 412). As to the "unreasonable application" clause of the AEDPA, habeas relief is warranted only if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407.

The Supreme Court has ruled that the reasonableness of the application of the law is to be assessed objectively rather than subjectively. Id. at 409-10. In addition, the court cautioned that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410 (emphasis in original). Therefore, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; accord Bell v. Cone, 535 U.S. 685, 694, (2002). The Second Circuit has explained that while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation omitted).

## II.    Exhaustion

State prisoners petitioning for habeas corpus relief must exhaust the remedies available in the state courts before seeking federal review. 28 U.S.C. § 2254(b); Jones v. Keane, 329 F.3d 290, 294 (2d Cir. 2003). 28 U.S.C. § 2254(b)(1) provides that an application for a writ of habeas corpus "shall not be granted" unless it appears that "the applicant has exhausted the remedies available in the courts

of the state; or there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant." However, a district court is permitted, in its discretion, "to deny on the merits habeas petitions containing unexhausted claims – so-called 'mixed petitions.'" Mobley v. Senkowski, No.01-CV-6301, 2003 WL 22952846, at *2 (E.D.N.Y. Nov. 12, 2003) (emphasis omitted); see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").

The instant petition is "mixed" as it contains both exhausted and unexhausted claims. Only one claim was fully exhausted at the time the instant petition was filed. Because the petition as a whole is being denied on the merits, the court need not discuss whether each claim has been exhausted.

## III. Petitioner's Ineffective Assistance of Counsel Claims

Petitioner alleges that his defense counsel failed to provide effective assistance when he failed to 1) put on a defense; 2) protect petitioner's right to present a defense; 3) protect petitioner's right to testify; and 4) present a notice of lesser included offenses. Petition at ¶¶ 22A-D. Petitioner also claims his appellate counsel was ineffective because appellate counsel failed to raise ineffective assistance of trial counsel. Id. at ¶ 22E. Petitioner maintains his rights under the Fifth, Sixth, and Fourteenth Amendments were violated. Ground Five.[3] Petitioner's claims are denied.

A habeas petitioner claiming ineffective assistance of counsel must meet a two-part test:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the [petitioner] must

---

[3] References to "Ground ___," refer to the pages attached to to the instant petition.

7

show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland v. Washington, 466 U.S. 688, 687, (1984).

Thus, to establish an ineffective assistance of counsel claim, the petitioner must demonstrate both 1) that his attorney's performance "fell below an objective standard of reasonableness," and 2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688, 694. In assessing whether counsel's performance was reasonable, judicial scrutiny "must be highly deferential," and the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action must be considered sound trial strategy." Id. at 689; Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998).

In assessing counsel's performance, the Court "must conduct an objective review ... measured for 'reasonableness under prevailing professional norms,' which includes a context-dependant consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" Wiggins v. Smith, 539 U.S. 510, 523 (2003) (quoting Strickland, 466 U.S. at 688-89)). The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct" and has instead emphasized that "'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" Id. at 521 (quoting Strickland, 466 U.S. at 688).

To establish the requisite effect of counsel's performance on the outcome of the proceedings, petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the

8

result of the proceeding would have been different." Strickland, 466 U.S. at 694. Merely asserting that counsel's errors had "some conceivable effect" on the outcome is insufficient. Id. at 693. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id. at 694. This determination, unlike the determination whether counsel's performance fell below an objective standard of reasonableness, may be made with the benefit of hindsight. See Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) ("We adopted the rules of contemporary assessment of counsel's conduct because a more rigid requirement 'could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.'") (quoting Strickland, 466 U.S. at 690).

Petitioner claims defense counsel failed to prepare a defense, properly examine witnesses, or call any witnesses in petitioner's defense. See Ground One. Petitioner further claims that defense counsel sought to conclude the trial "as quick [sic] as possible" out of a desire to avoid working on the case. Petitioner's claims are belied by the record. Examination of the trial record reveals that defense counsel was an enthusiastic advocate for his client. Defense counsel filed a pre-trial Sandoval motion, thoroughly examined the People's witnesses, and objected, oftentimes vehemently, to rulings that adversely affected petitioner. See e.g. T at 11-15, 222, 225, 232, 595, etc.

Furthermore, petitioner fails to identify what inquiries or evidence defense counsel should have pursued or introduced. Instead, petitioner concedes that defense counsel's decision not to call witnesses was "strategic." Ground One. "As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are 'virtually unchallengeable.'" Ramdeo v. Phillips, No. 04-CV-1157, 2007 WL 1989469, at *30 (E.D.N.Y. July 09, 2007) (quoting Strickland, 466 U.S. at 690-91). In this case there is no basis for petitioner's claim that defense counsel's strategic decisions

9

were unreasonable. As petitioner fails to meet either prong of the Strickland standard, ground one is denied.

Petitioner's second ground is vague. Though petitioner never identifies the proceeding by name, he appears to be challenging defense counsel's response to the court's Molineux ruling. Ground Two ("Because of [defense counsel's] deficiency and hidden motives, the judge's rulings were not properly challenged, thereby admitting . . . evidence that the victim of petitioner's alleged conspiracy was the complaining witness in a pending rape case against petitioner . . . ."). Petitioner claims that defense counsel failed to object when testimony was introduced in violation of the court's rulings.

An examination of the record demonstrates that defense counsel repeatedly challenged the court's Molineux ruling and objected each time the prosecution attempted to introduce evidence beyond the scope of the court's directive. T at 222 (challenging Molineux ruling); Id. at 225-232, 574-575 (objecting to any testimony from rape and robbery victim). Furthermore, defense counsel's objections were repeatedly sustained by the court, and the jury was instructed to ignore any improper testimony. Id. at 584-591. Finally, defense counsel twice moved for a mistrial because the witness testified to matters beyond the scope of the court's directive despite counsel's objections. Id. at 590, 664. Petitioner's claim that defense counsel failed to adequately challenge the Molineux ruling and allowed the admission of improper evidence is without merit.

Petitioner also claims that defense counsel prevented him from testifying on his own behalf. On the issue of a defendant's right to testify, the Second Circuit has held

> that the decision whether a defendant should testify at trial is for the
> defendant to make, that trial counsel's duty of effective assistance
> includes the responsibility to advise the defendant concerning the
> exercise of this constitutional right, and that the two-part test
10

> established in Strickland[] should be used to assess a defendant's claim that defense counsel rendered ineffective assistance by preventing him from testifying or at least failing to advise him concerning his right to testify.

Brown v. Artuz, 124 F.3d 73, 74 (2d Cir. 1997). When petitioner raised this claim in his 440 motion to the state court, his trial counsel affirmed he had "made sure [petitioner] was aware of" his "right to testify in court." Marvin Landou's Affirmation in Response to Petitioner's 440.10 Motion ("Landou Aff.") at ¶ 11. Defense counsel further stated that after discussing the issue, petitioner "agreed that he should not testify on his own behalf, because to do so would risk opening the door" to "prejudicial testimony about the rape and robbery." Id. at ¶ 10. The trial record also reflects that before the defense rested its case, defense counsel confirmed that petitioner did not wish to testify. T at 596 (counsel stating, "I am most likely going to rest. It's 99 percent until I walk out there."). Trial counsel states that he walked over to petitioner, who nodded his assent that he should not testify, and then the defense rested. Landou Aff. at ¶ 12. Finally, defense counsel notes that petitioner "was fully aware he would be restricted by the court's ruling that if he impugned [the victim's] testimony in any way it would open the door to prejudicial testimony from the rape and robbery case." Landou Aff. at ¶ 11. The state court decision regarding petitioner's claim that defense counsel prevented him from testifying on his own behalf was not contrary to or an unreasonable application of federal law. Therefore, ground three is denied.

Petitioner contends that "[a]ny number of lesser included offenses could have been presented to the jury"; and that, had they been given, it "would have had a large affect on any verdict and sentencing (if any)." This ground is denied for multiple reasons.

First, defense counsel apparently requested a charge on lesser included offenses. During the charging conference, the court states "there is no legal lesser. You [defense counsel] asked for a lesser

11

included. That's denied." T at 602. Second, the trial court is not constitutionally required to submit jury instructions on lesser included offenses in non-capital cases like petitioner's. Hegdal v. Fisher, No. 01CV0136, 2004 WL 1810330, at *3 (E.D.N.Y. Aug. 11, 2004) (citing Beck v. Alabama, 447 U.S. 625 (1980)); see also Jones v. Hoffman, 86 F.3d 46, 48 (2d Cir. 1996) (reasoning that applying Beck to non-capital cases on habeas review would "involve the announcement of a new rule," a result specifically barred by Teague v. Lane, 489 U.S. 288, 290-91 (1989) ("[H]abeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure unless those rules would be applied retroactively to all defendants on collateral review.")). Accordingly, ground four is denied as the state court's decision not to include lesser offenses was not contrary to or an unreasonable application of clearly established Federal law. 28 U.S.C. § 2254(d).

Finally, petitioner argues that he was denied the effective assistance of appellate counsel because appellate counsel failed to raise the four preceding grounds for ineffective assistance of trial counsel. A claim for ineffective assistance of appellate counsel is evaluated under the same standard as a claim for ineffective assistance of trial counsel. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); see also Smith v. Robbins, 528 U.S. 259, 285 (2000) (applying Strickland to appellate counsel's performance). A petitioner may establish ineffective assistance by showing that appellate counsel failed to raise "significant and obvious issues" on appeal. Kendrick v. Greiner, 296 F. Supp.2d 348, 360 (E.D.N.Y. 2003) (quoting Mayo, 13 F.3d at 533). Appellate counsel "need not (and should not) raise every non-frivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith, 528 U.S. at 288 (citing Jones v. Barnes, 463 U.S. 745, 750-54 (1983)); accord e.g. Sellan v. Kuhlman, 261 F.3d 303, 317 (2d Cir. 2001) ("This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail,

12

far from being evidence of incompetence, is the hallmark of effective appellate advocacy."). Thus, a petitioner may establish constitutionally ineffective assistance of counsel only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo, 13 F.3d at 533.

As the Court has found that there is no merit to petitioner's ineffective assistance of trial counsel claims, petitioner's ineffective assistance of appellate counsel claim is likewise without merit. Rolle has not shown that the state court's rejection of his ineffective assistance claims was either contrary to, or an unreasonable application of, the Strickland standard.

## CONCLUSION

Accordingly, petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied. No certificate of appealability shall issue as petitioner has made no showing of a substantial denial of any constitutional right. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997) (abrogated on other grounds); United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate of appealability); see also Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112-13 (2d Cir. 2000), cert. denied 531 U.S. 873 (2000). The Clerk of the Court shall enter Judgment.

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: August 10, 2007
      Brooklyn, New York